HAWTHORNE, Justice.
 

 
 *29
 
 Touro Synagogue instituted this suit against Goodwill Industries of New Orleans Area, Inc., for specific performance of an agreement to buy a certain piece of real estate in the City of New Orleans. On April 9, 1956, Touro Synagogue agreed to sell, and Goodwill Industries agreed to buy, an abandoned cemetery at the corner of Jackson Avenue and South Saratoga Street in this city for $50,000. In this agreement Touro Synagogue bound itself to remove at its own expense and in compliance with proper religious ceremony all remains and tombstones from the abandoned cemetery to a cemetery which it is presently using. Pursuant to this agreement Touro tendered title to Goodwill, but the latter refused to accept title on the ground that title was litigious and not merchantable because the property was used as a cemetery at one time and the remains of the dead had never been removed. This suit followed.
 

 The court appointed a curator ad hoc to represent the absent heirs or survivors of those persons buried in the cemetery. The curator ad hoc, who diligently and commendably discharged his duties, located 29 persons residing in the State of Louisiana who were survivors of those buried in the cemetery property. All of these persons were made parties defendant in this suit.
 

 The City of New Orleans intervened in the suit alleging among other things that the board of health had condemned the abandoned cemetery as a nuisance and a menace to public health. In this intervention the city prayed that judgment be rendered in favor of Touro Synagogue because conversion of the cemetery to a Goodwill Industries activity would eliminate the whole problem posed by the abandoned cemetery.
 

 In due course the lower court rendered judgment in favor of petitioner Touro Synagogue and against the defendant Goodwill Industries of New Orleans Area, Inc., the absent and unknown defendants who were survivors of the persons buried in the cemetery represented here by a curator ad hoc, and the persons who had been cited to appear in the suit as known descendants of persons buried in the cemetery. This judgment ordered the defendant Goodwill Industries to perform, within 60 days from the date the judgment is final, the agreement which it had entered into with Touro Synagogue. The judgment further ordered
 
 “ *
 
 * * that petitioner, Touro Synagogue, at its expense, and under the supervision of the Rabbinical Council of New Orleans, Louisiana, and in accordance with traditional Jewish ceremony as prescribed by the said Rabbinical Council, shall remove all remains of persons buried and all tomb stones from the Jackson Avenue Cemetery owned by petitioner, and shall reinter the said remains in Hebrew Rest Cemetery which is being presently used and maintained by petitioner,
 
 *31
 
 and petitioner shall thereafter erect on the site of said reinterment a suitable and appropriate monument containing thereon the names of all persons whose remains have been disinterred from the Jackson Avenue Cemetery and reinterred in the Hebrew Rest Cemetery, said removal to commence when this judgment is final and shall be completed prior to the execution of the act of sale by petitioner, to defendant, Goodwill Industries of New Orleans Area, Inc.” The curator ad hoc and Goodwill Industries have appealed to this court.
 

 The following pertinent facts were established and are undisputed: Appellee Touro Synagogue is a Louisiana religious corporation whose congregation professes the Reformed Jewish faith. Appellant Goodwill Industries of New Orleans Area, Inc., is a non-profit organization dedicated to the purpose of providing employment, training, rehabilitation, and opportunity for the handicapped people of this area and is a member of the New Orleans Community Chest. Appellee, incorporated by Act 84 of 1828 under the name of “Shangari Chassed” (Gates of Mercy), was the first Jewish congregation to be organized in this state.
 
 [1]
 
 On April 26, 1828, this congregation purchased a square of ground then situated outside the limits of the City of New Orleans but now in the Fourth District of the City at 2000 Jackson Avenue, in a heavily populated area. This property is recognized as the first Jewish burial ground of record in this state. Part of this square of ground so acquired is the subject of this suit and is designated as a cemetery under the comprehensive zoning ordinance of the city. The first interment in this Jewish cemetery took place on June 2, 1828, and the last in 1872. There was never any written contract designating the property as a cemetery, there were no deeds or certificates issued to the families of the persons buried in it, and the cemetery was considered as a private cemetery with burials restricted to persons of the Jewish faith.
 

 In 1859, the congregation Shangari Chassed acquired the site where Hebrew Rest Cemetery No. 1 is presently located, permission was granted by the city to convert that property to a burial ground, and the first interment took place there in 1866. On October 15, 1937, the charter under which appellee was then incorporated was amended to change its name to Touro Synagogue, and Touro Synagogue as successor of the congregation Shangari Chassed is the record title holder of the Jackson Avenue property here involved.
 

 From 1872, when the last interment took place in the Jackson Avenue Ceme
 
 *33
 
 tery, until 1956, when Touro agreed to sell the property to Goodwill, the Hebrew Rest Cemetery Association acted as custodian of the Jackson Avenue Cemetery, spending various sums of money for its repair and upkeep, which, however, were not sufficiently large to maintain the place and prevent its falling into rain. Since 1872 the Jackson Avenue Cemetery has had no income from annual fees, and there has been no fund to maintain it except $2,000 collected in 1924. This property has been neglected to the point where many graves have lost their identity; huge trees grow about the property, some of which have in their growth actually opened graves; weeds of various heights cover the entire area except for a beaten path; many tombstones have been knocked down or broken and a number of graves have been opened; bushes practically block the front gate, and much of the wall which formerly surrounded the cemetery has fallen to ruin.
 

 Appellee has been notified by the director of health of the City of New Orleans that the cemetery was condemned as being unfit for burial, and was ordered to demolish the cemetery so as to abate any hazards which might develop from the conditions that prevail there.
 

 Under traditional Jewish law the dead acquire possession of the place in which they are buried and should not be disturbed except when the place of burial is no longer safe from an act of desecration.
 
 [2]
 
 ' The Rabbinical Council of New Orleans found that it was proper under Jewish religious law that the remains of people buried in this cemetery be removed and buried in another place. The members of this council were of the opinion that the bodies were being desecrated in this cemetery, that out of respect for the dead it was best that they be removed according to the arrangements. for removal contemplated in this case, and that there was nothing in the Jewish law as understood by the rabbis composing the council which prohibited the removal of remains under such circumstances. In 1954 the council, composed of the active rabbis of all six Jewish congregations of this city, passed a resolution recommending that the bodies buried in the Jackson Avenue Cemetery be removed; that the disinterment and reinterment be under the supervision of the rabbis, who were to see that all proper religious ceremonies, requirements, and observances were complied with; that the expense of disinterment and reinterment be borne by Touro Synagogue; that at its
 
 *35
 
 expense also a monument be erected over the reinterred remains in the Hebrew Rest Cemetery, on which the names of all persons interred would be inscribed, and that the cost of perpetual care in the Hebrew Rest Cemetery be borne by Touro Synagogue.
 

 In this court the curator ad hoc contends that the lower court erred in overruling the exceptions of no cause or right of action filed to the petition of intervention of the City of New Orleans.
 

 It appears to us that the city has sufficient interest under the provisions of Article 390 of the Code of Practice to intervene in this suit. The curator ad hoc evidently overlooks the fact that the agreement between plaintiff and defendant provides for the removal of all remains and tombstones from the abandoned cemetery. In this respect certainly the city has an interest, and by its intervention it has not raised any issues between the parties which they themselves have not raised. Moreover, contrary to the view of the curator, the city in this suit is not seeking a judicial condemnation of the cemetery, but asks only that the prayer of plaintiff be granted, which simply means that the objectionable conditions presently existing in the abandoned cemetery would be eliminated.
 

 It is also contended that the court erred in failing to recognize that the property in question has been irrevocably dedicated for purposes of burial, or, in other words, that land which has been used as a cemetery is dedicated in perpetuity and cannot be sold or used for any other purpose.
 

 It is clearly established and proven in this case that the relatives of the persons buried in the Jackson Avenue Cemetery have abandoned it as a cemetery and failed to keep it up, that it has disintegrated to such a point that it is unfit for burials, and that the synagogue has been ordered by the board of health to demolish it as a cemetery so as to abate hazards which might develop from the conditions prevailing there.
 

 The contention that land comprising a cemetery is not subject to alienation because it has been irrevocably dedicated was fully answered by this court in the case of City of New Orleans v. Christ Church Corporation, 228 La. 184, 81 So.2d 855, 859. In that case this court said:
 

 “The curator-ad-hoc argues that public policy and good morals require that an area once dedicated as a cemetery should remain so dedicated and should not be expropriated.
 

 “In the case of Humphreys v. Bennett Oil Corporation, 195 La. 531, 197 So. 222, 229, we stated:
 

 “ ‘Regardless of the laws and rules relating to the ownership and control of real
 
 *37
 
 property, when a plot of ground is set apart for cemetery purposes, and burials are made in the land, the ground changes its character in the minds and feelings of the community. “It assumes a sacred quality that overrides conveyancers’ precedents and requires freedom from profanation until, by abandonment and removal of the bodies or by complete disintegration, there remains nothing to appeal to the emotions of the survivors.” ’
 

 "We believe there are reasons why property which has been dedicated and used for public purposes does not become so dedicated in perpetuity. Particularly is this true when the ground so dedicated has become an abuse rather than a holy use. *
 
 * * ” (Italics ours.)
 

 See also Choppin v. Dauphin, 48 La.Ann. 1217, 20 So. 681, 33 L.R.A. 133.
 

 Since the land comprising a cemetery is not dedicated as a cemetery in perpetuity, the next question which we must answer is whether the cemetery here involved has been abandoned and the land no longer used for the purpose for which it was dedicated.
 

 The cemetery in this case has clearly been abandoned. This burial ground has received no interment since 1872 and in its condition of disintegration is presently unfit for this purpose. In addition, the public and the survivors or others interested in its use as a cemetery have failed to keep and preserve it as a resting place for the dead. The premises have been permitted to fall into disorder, the walls to crumble, and the gravestones and monuments to be destroyed so that graves have lost their identity and nothing now remains to stir the emotions or sentiments of the relatives of the dead.
 

 We can find no justification under the facts established for denying Touro Synagogue the right to sell the property here involved subject to the conditions imposed by the judgment of the court.
 

 It is also argued that Touro was under a trust and duty to maintain this property which had been dedicated as a burial ground, that the cemetery disintegrated and deteriorated because of the failure of Touro to perform this trust and duty, and that it is now estopped to claim any benfits from its own acts of negligence.
 

 The answer to this argument is that under the facts we have here we are unable to find that there was any duty imposed on Touro Synagogue to maintain this property as a cemetery at its own expense. Even though there is no obligation on the part of Touro to maintain this property, however, it is to be noted that it has agreed at its own expense, as a condition precedent to this sale, to disinter the persons buried there and to rebury them in a cemetery presently used and maintained, with proper religious rites under a suitable monument
 
 *39
 
 to honor their memories; and the judgment so orders.
 

 The curator ad hoc calls our attention to a provision in the legislative charter ■of Shangari Chassed (see Section 5 of Act 84 of 1828 and Act 65 of 1843 amending and reenacting that section) which he says prohibits the sale of the cemetery by Touro Synagogue. It is true that the original legislative charter of the corporation which acquired the property here involved did prohibit the sale by the congregation of its burial grounds, but that charter expired by its own terms in 25 years. The present ■charter of Touro Synagogue contains no such prohibition, and under this charter Touro can sell any property which its owns. The curator concedes that there is no restriction against the sale in the present charter, but argues that Touro as the successor of Shangari Chassed, the original purchaser, is bound by the prohibition in the original charter.
 

 We confess that this argument gives us some concern and would appear to have merit were it not for the fact that the survivors or relatives of those interred in the burial ground have abandoned it and permitted it to disintegrate and become unfit for burials to such an extent that the board of health of New Orleans has condemned and ordered it demolished to abate public hazards which might develop from conditions existing there. Under these facts the survivors or relatives or any of those represented by the curator ad hoc have no right to invoke against Touro the provisions found in the charter of its predecessor, in the absence of any such restriction in the charter under which it now exists and in the absence of any obligation or duty on it to maintain and care for the cemetery.
 

 For the reasons assigned the judgment appealed from is affirmed.
 

 [1]
 

 . The original charter was for 25 years. In May, 1852, before the expiration of ,- this charter, Shangari Chassed enrolled a perpetual charter with the Secretary o£ State. This enrollment was lost, but there was a reinseription of it in March, 1853.
 

 [2]
 

 . Article 456 of the Civil Code provides: “The provisions of the ancient laws concerning the distinction of things into things holy, sacred, and religious, and the nature and inalienability of these kinds of things, are abolished; and nothing prevents the corporations or congregations to which these things belong, from alienating them, provided it be done in the manner and under the restrictions prescribed by their acts of incorporation.”