Dear Ms. McCann:
You have requested an opinion from this Office regarding the extent of the Louisiana Cemetery Board's ("LCB") regulatory jurisdiction as it relates to historic and prehistoric cemeteries and burial sites. Based upon telephone conversations and meetings with you subsequent to the receipt of your opinion request, we have identified the general problem that has prompted this request. That problem is discussed below.
I. Introduction
With increasing frequency over the past few years, the LCB has received calls asking for guidance when apparently abandoned cemeteries are discovered around the State. Most of these calls are prompted by a need or desire to relocate such cemeteries in advance of some type of construction activity. Because of the LCB's general charge to regulate operating cemeteries (a charge explained in more detail below), you have questioned whether you have the authority to provide such guidance. With this scenario in mind, we present the three questions from your opinion request. Specifically, you have asked:
 1) What are the LCB's boundaries and/or jurisdiction?
 2) What happens if there is an overlap in jurisdiction?
 3) What is the protocol that should be followed once proper jurisdiction is determined? *Page 2 
Although we address all of your questions fully below, several issues that are not immediately obvious are inherent in your first question, thus requiring it to be divided into the following two subparts:
 What are the jurisdictional boundaries of the LCB?; and
 What entity has jurisdiction over abandoned cemeteries?
Each of these questions is answered in separate parts of this opinion. In addition, several ancillary matters have arisen during the course of this research that are essential to a complete understanding of your questions. Thus, those matters are discussed in a separate part following the initial responses to your specific questions.
II. Jurisdictional Boundaries of the LCB
As you are aware, the LCB and Title 8 of the Revised Statutes, which govern operating cemeteries in the State, were created by the Legislature by Act 417 of 1974. The LCB is charged with the duty to "enforce and administer the provisions of"[1] Title 8 and it is empowered to create rules and regulations to effectuate that enforcement and administration.[2] Although the LCB's authority to enforce the law of Title 8 is clear and unambiguous, the Legislature has exempted a series of cemeteries from some, but not all, of the LCB's regulatory requirements. The following cemeteries are exempt from having to obtain a certificate of authority from the LCB, though they remain subject to various general provisions of Title 8 and the LCB's regulatory authority:
 A. The provisions of this Chapter shall not apply to family burial grounds, [3] fraternal cemeteries, [4] municipal cemeteries, [5]
community *Page 3 
cemeteries, [6] state cemeteries, [7] federal cemeteries[8] or religious cemeteries[9] that do not sell cemetery spaces, sell the right of use or interment in any cemetery space, or charge a fee per cemetery space for an amount in excess of thee hundred dollars.
 B. The provisions of this Chapter shall not apply to community cemeteries[10] owned and operated by nonprofit corporations in existence prior to January 1, 2007, whose officers and directors serve on a voluntary basis without compensation for their services.
 C. The provisions of this Chapter shall not apply to columbarium[11] facilities owned and operated by churches for the interment of human remains.
La.R.S. 8:78 (emphasis and footnotes added). Thus, as long as the above enumerated cemeteries are not selling cemetery spaces or interment rights or collecting a maintenance fee at a rate in excess of three hundred dollars, those cemeteries are exempt from the regulatory requirements of Title 8 of obtaining a certificate of authority from the LCB. However, this does not exempt thesecemeteries from the duty to comply with the general provisions ofTitle 8, nor does it limit the LCB's authority to enforce theseprovisions against such cemeteries.[12] In addition, we are aware from our conversations with you that the LCB has, for some time, made a practice of keeping a register of as many of these exempt cemeteries as possible in the interest of maintaining contact information and monitoring their compliance with Title 8, generally. It is the *Page 4 
opinion of this Office that such record keeping is a prudent practice and is in keeping with the LCB's charge to enforce and administer Title 8.
As has been noted in previous opinions of this Office, particularly La. Atty. Gen. Op. No. 07-0183, 08-0100, and 08-0186, it is these exempted cemeteries whose historic integrity are most often threatened. The threats to the sanctity of these burials come both from well-intentioned, but inappropriately executed, preservation and conservation efforts and through development activities.
Based upon the foregoing discussion, it is the opinion of this Office that the limits of the LCB's regulatory jurisdiction extend to enforcing the provisions of Title 8 in Louisiana. For the purposes of this opinion, this jurisdiction covers the restrictions against demolition of cemetery spaces within operating cemeteries. La.R.S. 8:308; La.R.S. 8:903-903.1; La. Atty. Gen. Op. No. 07-0183.[13]
III. What Entity Has Jurisdiction Over AbandonedCemeteries?
What then, if any, is the regulatory authority applicable to abandoned cemeteries? It is the opinion of this Office that abandoned cemeteries that are otherwise exempt from the purview of Title 8 (i.e., they are not operating cemeteries) are not covered by the regulatory authority of the LCB, but are rather under the authority of the Louisiana Division of Archaeology by virtue of the Louisiana Unmarked Human Burial Sites Preservation Act ("Unmarked Burials Act"). As created by Act 704 of 1991, the Unmarked Burials Act[14] was placed under the enforcement authority of the Louisiana Unmarked Burial Sites Board. La.R.S. 8:675. However, by Act 713 of 2006, the Louisiana Legislature rolled this Board's duties into the Louisiana Department of Culture, Recreation, and Tourism, [15] with the Board's permitting duties now resting with the Louisiana Division of Archaeology ("Division")[16] and the State Archaeologist.
Our opinion as to what entity, if any, has regulatory authority over isolated and abandoned cemeteries is grounded in the language of the Unmarked Burials Act. That Act specifically defines "unmarked burial site" as: *Page 5 
 . . . the immediate area where one or more human skeletal remains are found in the ground that is not in a recognized and maintained municipal, fraternal, religious, or family cemetery, or a cemetery authorized by the Louisiana Cemetery Board.
La.R.S. 8:673(5). This definition leads to the following inferences. First, it clearly exempts from the regulatory authority of the Division, and the purview of the Unmarked Burials Act, any "cemetery authorized by the" LCB. Accordingly, it is the opinion of this Office that if a cemetery holds a current certificate of authority issued by the LCB pursuant to La.R.S. 8:70-72, the Division has no jurisdiction over that cemetery and the Unmarked Burials Act does not apply.
Second, the definition in La.R.S. 8:673(5) also clearly exempts cemeteries classified as those that are a "recognized and maintained municipal, fraternal, religious, or family cemetery". Id. There is no definition in Title 8 for either the words "recognized" or "maintained." However, within the broader context of Title 8, it is apparent that the "recognition" refers to the presence of a cemetery on the LCB's register of those cemeteries that are operating, but do not meet the three hundred dollar threshold for license requirements.[17] It is also important to note that under La.R.S. 8:673(5), both recognition and maintenance are required. Thus, the simple fact that a cemetery is registered with the LCB does not exempt that cemetery from coverage by the Unmarked Burials Act. Only cemeteries that do not hold a current LCB certificate of authority, but that are recognized by the LCB, and are maintained can claim an exemption from the Unmarked Burials Act. In making the foregoing statement, we realize that there are a few cemeteries in Louisiana that are either not recognized by the LCB or are not maintained, thus apparently causing some overlap in the jurisdiction of the LCB and the Division. In such situations, no blanket statement of jurisdiction is currently possible and this Office recommends that the LCB and the Division create a Memorandum of Understanding setting forth the responsibilities of each entity for dealing with such scenarios.
As with the term "recognition", there is no definition of the term "maintained" in Title 8. Following the requirement of La.C.C. Art. 11, which states that "[t]he words of a law must be given their generally prevailing meaning", we turn to a dictionary definition of the term, "maintain" to divine the Legislature's intended application of the Unmarked Burials Act. The Concise Oxford English Dictionary defines "maintain" as to "keep (a building, machine, etc.) in good condition by checking or repairing it regularly."[18] Although an unmaintained cemetery may be *Page 6 
the equivalent of what would colloquially be referred to as an abandoned cemetery, [19] the question of abandonment is not determinative of the classification of a cemetery as "unmarked".[20] In other words, if a cemetery is in a poor state of maintenance — a state that evidences years of neglect — although it may not be legally abandoned, it has likely met the requirements for a lack of maintenance sufficient to trigger this prong of the Unmarked Burials Act.
From the previous analysis, the question arises: does the term "unmarked" in the Unmarked Burials Act refer to an actual burial that does not have a grave marker or does it refer generally to the traditional nature of how the cemetery is "marked" (i.e., fence, etc.)? In other words, does the Division's regulatory authority only cover graves without markers, but not graves with markers or does it cover a broader range of abandoned cemeteries? We are of the opinion that the Division's authority extends to the latter. To support this conclusion, we must examine two things: the environment within which the Unmarked Burials Act was created in the early 1990s and the stated legislative intent of the Act.
The Unmarked Burials Act was enacted in the wake of the enactment by Congress of the Native American Graves Protection and Repatriation Act ("NAGPRA")[21] in 1990. This piece of legislation set in place a mechanism for the return and reburial of certain Native American skeletal remains and sacred objects from museum and university collections across the United States as well *Page 7 
as providing for the protection of in situ remains.[22]
NAGPRA's legislative history makes abundantly evident that Congress enacted this law because of its desire to make reparations for the wrongs committed against Native Americans since A.D. 1492.[23] In recognition of the somewhat narrow scope of NAGPRA, [24] many states set out to fill in the gaps left by Congress in the years after 1990.[25] Louisiana's enactment of the Unmarked Burials Act in 1991 was part of this state-level movement nationwide. Because many of the states, Louisiana included, enacted burial protection laws that were much more comprehensive and preservation-oriented than is NAGPRA, we are of the opinion that these laws should be broadly construed when considering which burials are covered.
The stated legislative purpose in La.R.S. 8:672 supports the opinion of this Office that the Unmarked Burials Act should be broadly construed. That provision states:
 The legislature finds that existing state laws do not provide for the adequate protection of unmarked burial sites and of human skeletal remains and burial artifacts in such sites. As a result, there is a real and growing threat to the safety and sanctity of unmarked burial sites, both from economic development of the land and from persons engaged for personal or financial gain in the mining of prehistoric and historic Indian, pioneer, and Civil War and other soldiers' burial sites. Therefore, there is an immediate need for legislation to protect the burial sites of these earlier residents of Louisiana from desecration and to enable the proper archaeological investigation and study when disturbance of a burial site is necessary or desirable. The legislature intends that this Chapter shall assure that all human burial sites shall be accorded equal treatment, protection, and respect for human dignity without *Page 8 
reference to ethnic origins, cultural backgrounds, or religious affiliations.
La.R.S. 8:672. This legislative purpose recognizes the significant threats to cemeteries and it extends its coverage equally, regardless of the ethnic or cultural affiliation of the burials and regardless of the age of the burials. Equally important is the fact that the Legislature distinguished three classes of things in need of protection: human remains, burial artifacts, and burial sites.Id. From the recognition that burial sites are in need of protection, we here opine that the purpose of the Unmarked Burials Act is to provide the Division with the authority to permit activities occurring within any cemetery in Louisiana that meets the following classifications:
 1) It is not a cemetery with a valid certificate of authority from the LCB;
 2) It is not a cemetery registered with the LCB; and
 3) It is not a maintained cemetery.
Thus, it is the opinion of this Office that the Division's authority to regulate activities in cemeteries under the Unmarked Burials Act is broad and does not rest on whether the actual grave in question is associated with an actual marker. Instead, this authority extends to cemeteries with or without traditional markers that are not subject to the jurisdiction of the LCB, are not exempt from the Unmarked Burials Act, and are not "recognized and maintained" cemeteries. It is further the opinion of this Office that, for cemeteries that fall within the coverage of the Unmarked Burials Act, the LCB has no regulatory jurisdiction.
IV. What Happens If There Is An Overlap of Jurisdiction?
To answer your second question, we find it prudent to consider the interplay of the LCB's regulatory authority under Title 8 and the Division's regulatory authority under the Unmarked Burials Act. As we noted above, the LCB has no regulatory authority over cemeteries considered to be within the coverage of the Unmarked Burials Act. That said, we have previously opined that LCB-regulated cemeteries must comply with some historic preservation requirements when undertaking certain activities. See, La. Atty. Gen. Op. No. 07-0183. When reading together the opinions expressed herein with those of La. Atty. Gen. Op. No. 07-0183, a clear picture of cemetery regulation in Louisiana emerges. For those cemeteries that hold current certificates of authority from the LCB or those that meet the requirements of La.R.S. 8:673(5) (i.e., cemeteries that do not fall under the coverage of the Unmarked Burials Act), we reiterate our opinion in La. Atty. Gen. Op. No. 07-0183 that compliance with La.R.S. 8:308, 8:903, and 8:903.1 is *Page 9 
mandatory.[26] All other cemeteries are subject to the regulatory and permitting authority of the Division under the Unmarked Burials Act. However, as noted above, there may be a few instances when the LCB's general authority to enforce Title 8 overlaps with the Division's authority to regulate cemeteries under the Unmarked Burials Act. In these situations, we recommend that the LCB and the Division either create a Memorandum of Understanding setting forth the responsibilities of each entity for dealing with such scenarios or simply deal collaboratively with such scenarios on a case-by-case basis.
V. What Is The Protocol That Should Be Followed?
The protocols that should be followed once proper jurisdiction is determined, are fairly simple. Should it be determined that a cemetery wishing to disinter remains or otherwise alter a grave space holds a valid certificate of authority from the LCB, the LCB must require compliance with La.R.S. 8:308, 8:903, and 8:903.1. It is the opinion of this Office that, as the industry regulator for Louisiana, it is also the LCB's job to ensure compliance with La.R.S. 8:308, 8:903, and 8:903.1 by other cemeteries that do not fall under the coverage of the Unmarked Burials Act (i.e., the municipal, fraternal, religious, and family cemeteries that are recognized and maintained). However, should it be determined that burials that are disturbed or altered or are to be disturbed or altered are located within a cemetery that does not hold a current certificate of authority from the LCB and is not otherwise recognized and maintained, the Division's permitting authority must be exercised. In cases where there may be a slight overlap of jurisdiction, the LCB and the Division should collaborate to determine the best approach to protecting the particular cemetery.
It is important to note that many properties containing abandoned cemeteries are situated on private property. In such cases, the Division will have to consider the private landowner's interests in their own property before issuing any permit under the Unmarked Burials Act. The Unmarked Burials Act does not contain exemptions that would allow landowners to avoid compliance on their private property. However, this does not mean that private landowners should be completely ignored during the Unmarked Burials Act permitting process. Accordingly, it is our opinion that landowners are necessary and interested *Page 10 
parties during the Unmarked Burials Act consultation process and that landowners must approve of any permitted activity on their property (subject to the minimal visitation and cleaning/maintenance allowances discussed in La. Atty. Gen. Op. No. 08-0186).
VI. Ancillary Matters
Through discussions with the LCB and the Division during the research and writing of this opinion, several tangential, but important questions that logically flow from the above discussion have been raised. To the extent possible, we address those questions here.
1) What is the interplay of La.R.S. 8:659 and the Unmarked Burials Act?
Because it is the opinion of this Office that the Division is vested with the authority to regulate any activities in abandoned cemeteries, it is further the opinion of this Office that the requirements to seek familial or judicial approval for disinterment under La.R.S. 8:659 do not apply to abandoned cemeteries. These requirements are embodied in the Division's charges under the Unmarked Burials Act, to wit:
 The [Division] shall have the following powers and duties:
 * * * (3) To consult with all interested parties on occasions of disturbance of unmarked burial sites to determine a proper course of action.
 * * * (6) To issue permits for the disinterment and/or for the scientific study of human skeletal remains . . .
La.R.S. 8:676. Because these provisions embody the spirit of the requirements of La.R.S. 8:659, we are of the opinion that to require compliance with both provisions would be duplicative and unnecessary.
One provision of Title 8 that cannot be avoided through the application of the Unmarked Burials Act to a cemetery is the dedication of property under La.R.S. 8:304. That provision states that:
 After property is dedicated to cemetery purposes pursuant to this Chapter, neither the dedication nor the title of a plot owner shall be affected by the dissolution of the cemetery authority, by nonuse on *Page 11 
its part, by alienation of the property, or otherwise, except as provided in this Title.
La.R.S. 8:304(A). Basically, as we have stated in previous opinions, once a piece of property is used as a cemetery, the property becomes dedicated to that purpose. See, La. Atty. Gen. Op. No. 08-0100. The mere removal of obvious graves from that property does not accomplish a removal of the dedication.Id. Part of the reason that a dedication is not de facto
removed by the removal of obvious graves is that, although obvious graves may be removed, other remains may continue to be interred at a site, thus necessitating continued protection. The other component to this requirement is legal: La.R.S. 8:306 — the provision of the law that provides for the removal of the dedication — requires that all remains be removed from the area that is to be undedicated.
It is the opinion of this Office that, pursuant to its statutory authority to permit activities in abandoned cemeteries, the Division must include requirements for the compliance with La.R.S. 8:304 and 8:306 in its permits.[27] We believe that it would be perfectly acceptable for the Division to require the use of remote sensing technology, ground scraping, or any other methodology that it deems appropriate as part of a permit to ensure that all burials have been removed from an area. Following such assurances, it is the opinion of this Office that the party seeking a removal of the cemetery dedication must seek a court order removing that dedication following the procedures outlined in La.R.S. 8:306.
2) Is maintenance of an abandoned cemetery sufficient to remove that cemetery from the classification of abandoned and thus from the ambit of the Division's jurisdiction?
It is the opinion of this Office that "maintenance" is not tantamount to "operation". Thus, the mere fact that a person or group has assumed the task of cleaning or maintaining (i.e., grounds maintenance or repair work) a cemetery does not mean that the cemetery, once again, becomes an operating cemetery that is subject to LCB jurisdiction. Rather, "operation" refers to the actual continued placement of human remains within a cemetery. The situation in which human remains begin to be buried in otherwise abandoned cemeteries is discussed more fully, infra. Because we are of the opinion that the Division has regulatory authority over cemeteries in which cleaning may occur, we suggest that the Division partner with the LCB and interested industry and preservation groups to create binding or nonbinding guidelines for historic cemetery cleaning and maintenance. *Page 12 
In addition, we find it important to note that it is not the obligation of either the Division or the LCB to undertake restoration or maintenance of cemeteries under any circumstances. Both of these entities are regulatory in nature and lack the legal authority to undertake actual cemetery restoration or maintenance.[28]
3) If a cemetery was classified as exempt (e.g., a fraternal cemetery) under La.R.S. 8:78 while it was operational, but has since become abandoned, does it fall under the regulatory jurisdiction of the Division once abandoned?
It is the opinion of this Office that it is the classification of a cemetery as abandoned that brings it within the coverage of the Unmarked Burials Act. This is consistent with the earlier discussion that just because a cemetery is exempt does not mean that it does not have to adhere to the legal requirements of Title 8. We believe that this reasoning applies to abandoned cemeteries as well. Thus, even exempt cemeteries must comply with the Unmarked Burials Act and are thus subject to the regulatory oversight of the Division once they are abandoned.
4) If a small portion of an otherwise abandoned cemetery is operational, does the LCB or the Division maintain regulatory jurisdiction over the cemetery?
As noted above, the LCB is the State entity charged with the regulation of operating cemeteries. The Division is not in the business of regulating the cemetery industry and it is not equipped to manage issues related to interment. Thus, it is our opinion that the LCB retains regulatory authority in this situation. This opinion is based on two facts: (1) the LCB should continue its statutory charge of regulating operating cemeteries; and (2) it is difficult to enforce piecemeal regulation by different regulatory entities. Nonetheless, this opinion certainly does not rule out the creation of regulations by the LCB to consult with the Division on preservation matters that may occur in cemeteries under its regulatory jurisdiction, nor does it prohibit the creation of a memorandum of understanding between the LCB and the Division to jointly handle such matters.[29] In any event, as specific variations to the scenarios and problems presented herein occur, the Louisiana Attorney General, which is the statutory representative of both the LCB and the Division, is able and willing to provide continued logistical support and legal guidance to determinations and regulations made pursuant to this opinion and Title 8, generally. *Page 13 
We hope this sufficiently answers your inquiry; however, if we may be of further assistance please do not hesitate to contact our office.
 Sincerely yours,
 JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
 By: __________________________ RYAN M. SEIDEMANN Assistant Attorney Genreral
 JDC/RMS/tp
 cc: Dr. Charles R. McGimsey, Louisiana State Archaeologist
[1] La.R.S. 8:66. This enforcement and administration authority is only limited by Chapter 10-A of Title 8, which is known as the Louisiana Unmarked Human Burial Sites Preservation Act ("the Unmarked Burials Act"), found at La.R.S. 8:671, etseq. The provisions of this Chapter are enforced (now) by the Louisiana Division of Archaeology and the Louisiana Attorney General.
[2] La.R.S. 8:67. It is also important to note that the enforcement authority of the LCB extends to typical administrative enforcement. Beyond that authority, the Louisiana Attorney General is empowered to assist the LCB in the enforcement of Title 8.
[3] "`Family burial ground' means a cemetery in which no lots are sold to the public and in which interments are restricted to a group of persons related to each other by blood or marriage." La.R.S. 8:1(22).
[4] "`Fraternal cemetery' means a cemetery owned, operated, controlled or managed by any fraternal organization or auxiliary organization thereof, in which the sale of lots, graves, crypts, vaults or niches is restricted principally to its members." La.R.S. 8:1(23).
[5] "`Municipal cemetery' means a cemetery owned, operated, controlled or managed by a municipality or other political subdivision of the state, or instrumentality thereof authorized by law to own, operate or manage a cemetery." La.R.S. 8:1(31).
[6] "`Community cemetery' means a cemetery owned, operated, controlled or managed by any association or organization, in which the sale of lots, graves, crypts, vaults, or niches is restricted principally to individuals within a community." La.R.S. 8:1(14).
[7] "State cemetery" is not defined in Title 8, but the plain language of that term suggests that it refers to cemeteries owned and operated by the State of Louisiana.
[8] "Federal cemetery" is not defined in Title 8, but the plain language of that term suggests that it refers to cemeteries owned and operated by the United States government.
[9] "`Religious cemetery' means a cemetery that is owned, operated, controlled or managed by a recognized church, religious society, association or denomination, or by a cemetery authority or a corporation administering or through which is administered the temporalities of any recognized church, religious society, association or denomination. La.R.S. 8:1(37).
[10] "Community cemetery" means a cemetery owned, operated, controlled or managed by any association or organization, in which the sale of lots, graves, crypts, vaults, or niches is restricted principally to individuals within a community. La.R.S. 8:1(14).
[11] "Columbarium" means a building or a structure, room or other space in a building or structure containing niches for permanent inurnment of cremated remains in a place used or intended to be used, and dedicated, for cemetery purposes.
[12] In other words, because the LCB has the statutory duty to enforce all of Title 8 (with the exemption of Chapter 10-A), the fact that an exempt cemetery is not required to maintain a certificate of authority with the LCB does not exempt that cemetery from the general provisions of Title 8 (e.g., treatment of human remains, etc.) nor does the exemption impinge upon the LCB's authority and obligation to enforce these general provisions as against cemeteries exempted from the certificate of authority requirement under La.R.S. 8:78. La.R.S. 8:66.
[13] It is important to note that, as to the exempt cemeteries that are operating, we have previously opined that those entities must comply with La.R.S. 8:308 and La.R.S. 8:903 and 8:903.1, regardless of their exempt status. The LCB, being charged with the enforcement of Title 8 generally, can advise exempt, operating cemeteries and can request the assistance of the Attorney General for the enforcement of these provisions that limit reconstruction and repair of cemetery spaces and restrict their destruction in all active cemeteries in Louisiana. La. Atty. Gen. Op. No. 07-0183. The Attorney General's role in these matters arises by virtue of his being the statutory attorney for the LCB as well as the chief legal officer for the State. La.R.S. 8:69; La.Const. Art. IV, Sec. 8.
[14] The Unmarked Burials Act is codified at La.R.S. 8:671-681.
[15] This reorganization is now codified at La.R.S. 36:209(H)(3). Further, the Board was completely abolished by Act 438 of 2009 (H.B. 852).
[16] The Division of Archaeology, established in La.R.S. 41:1601, et seq., is under the authority of the Department of Culture, Recreation, and Tourism. La.R.S. 36:209(E).
[17] This inference is made based upon the explicit reference in La.R.S. 8:673(5) to "registration" and the fact that the LCB has a standing practice of keeping a register of cemeteries in Louisiana. Because this is the only register of this sort in the State, it is doubtful that the Legislature could have been referring to anything else.
[18] Catherine Soanes Angus Stevenson, CONCISE OXFORD ENGLISH DICTIONARY, 860 (Oxford 2006).
[19] This is consistent with the definition of the term "abandon," which is to "give up (an action or practice) completely."Id. at 2. A cemetery in which the caretakers have given up on keeping it in good condition would be one factor in determining whether a cemetery qualifies as an abandoned cemetery. This consistency is supported by the use of the term "abandoned cemetery" in Title 8. Although Title 8 does not contain a definition for "abandoned cemetery", the term's use in La.R.S. 8:112, La.R.S. 8:308, and La.R.S. 8:903 are consistent with the use of the term in this opinion. Indeed, the Louisiana Supreme Court has articulated one query into the question of abandonment thus:
 The cemetery in this case has clearly been abandoned. This burial ground has received no interment since 1872 and in its condition of disintegration is presently unfit for this purpose. In addition, the public and the survivors or others interested in its use as a cemetery have failed to keep and preserve it as a resting place for the dead. The premises have been permitted to fall into disorder, the walls to crumble, and the gravestones and monuments to be destroyed so that graves have lost their identity and nothing now remains to stir the emotions or sentiments of the relatives of the dead.
Touro Synagogue v. Goodwill Industries of New Orleans Area,Inc., 96 So.2d 29, 37-38 (La. 1957). From Touro Synagogue, it is apparent that the other factor is the continued use of the space as a burial place. The relevance of interplay of unmaintained and unused cemeteries for the purposes of this opinion is discussed more fully, infra.
[20] The mere stopping of maintenance of a cemetery is not enough for it to be considered legally abandoned in Louisiana. The Louisiana Supreme Court also requires the cessation of all interments for a cemetery to be considered abandoned. See, TouroSynagogue, supra.
[21] 25 U.S.C. 3001, et seq.
[22] Francis P. McManamon, The Reality of Repatriation: Reaching Out to Native Americans in Implementing the Native American GravesProtection and Repatriation Act (Roxana Adams, ed. American Association of Museums 2001).
[23] As noted in S. Rep. No. 100-601 (Oct. 21, 1988) at 2:
 It is the view of this Committee that there is a need for legislation in order to rectify the harm which has been inflicted upon Native American religious liberty and cultural integrity by the systematic collection of Native American skeletal remains, grave goods, and certain ceremonial objects which are required for the on-going conduct of religion.
See also, Ryan M. Seidemann, Bones of Contention: AComparative Examination of Law Governing Human Remains fromArchaeological Contexts in Formerly Colonial Countries, 64 LA. L.REV. 545(2004).
[24] It only applies to Native American remains and graves and it only applies on federal or tribal land or when federal funds are involved in a project. See, Ryan M. Seidemann, Time for a Change?The Kennewick Man Case and Its Implications for the Future of theNative American Graves Protection and Repatriation Act.
106 W.VA. L.REV. 149 (2003).
[25] See, Christine Quigley, SKULLS AND SKELETONS: HUMAN BONE COLLECTIONS AND ACCUMULATIONS, 215-217 (McFarland 2008).
[26] The operative language of these statutory provisions as they apply to this opinion are as follows:
 • La.R.S. 8:308(B): ". . . may take possession of but not demolish such abandoned interment spaces . . ."
 • La.R.S. 8:903(A): "Cemetery authorities may renovate and repair but not demolish . . ."
 • La.R.S. 9:903.1(A): "Cemetery authorities . . . may renovate, repair, and/or maintain vaults and/or wall vaults . . ."
These provisions are cited here because they stand for the proposition that the general law related to cemeteries in Louisiana does not allow for the demolition of cemetery spaces. La. Atty. Gen. Op. No. 07-0183. This would, in effect, be the default scenario for non-Unmarked Burials Act cemeteries.
[27] It is important to note that Title 8 does not currently require that the Division be notified of an intention to remove a cemetery dedication under La.R.S. 8:304 and 8:306. However, we recommend that, until such time as the law may be changed, it is prudent for the LCB to notify the Division and the Attorney General of such dedication removal requests in situations where it is clear that an excessive number of unmarked burials may be present.
[28] At the time of this writing, this Office is not aware of any such legal authorization or obligation for the LCB or the Division.
[29] It is envisioned by this Office that such matters would include advising the LCB on the proper methods to require of operating cemeteries to avoid disturbance of unmarked burials and advising the LCB regarding proper preservation techniques to employ in cemetery restoration and repair.