Dear Ms. Zeringue:
You have requested an opinion from this Office regarding the applicability of various cemetery protection laws to a tract in New Orleans that is slated for demolition and revitalization. Specifically, you have noted that the subject property, now known as the A.M. Williams Center, which is located at 2020 Jackson Avenue in New Orleans, was once the location of the Jackson Avenue Cemetery. This cemetery, which was in use from circa 1828-1957, was a Jewish cemetery that was moved by its congregation and by order of the Louisiana Supreme Court in 1957.[1]
However, as the City of New Orleans and the Federal Emergency Management Agency ("FEMA") embark on the planning phases of a project to revitalize this property in the wake of Hurricane Katrina, you have identified several important questions related to the applicability of Louisiana's cemetery law to the subject property, to wit:
1. Is it reasonable for FEMA to rely on the Touro Synagogue decision in 1957 that removed the "common law"[2] cemetery dedication on the subject property?
2. Although the court removed the dedication to cemetery purposes[3]
on the subject property in 1957 and although such a removal is premised on the *Page 2 
satisfaction of the court that no human remains are present on the property, would the identification of human remains during the planned demolition and construction operations effectively undo the prior removal of that dedication?
3. If the dededication of the Jackson Avenue Cemetery in 1957 is still valid, is archaeological site monitoring sufficient during the progress of the proposed demolition and construction operations or is compliance with the Louisiana Unmarked Human Burial Sites Preservation Act[4]
("the Unmarked Burials Act") required based upon the supposition that there may still be human remains interred at the site?
In order to answer your questions, a further recitation of some of the facts that you have provided in your request letter is in order. According to historic research conducted by FEMA and others, it has become apparent that human remains may, in spite of the 1957 court order, still be present at the Jackson Avenue Cemetery site. In fact, you note in your opinion request letter as follows:
[Works Progress Administration] records of the Jackson Avenue Cemetery indicate that there were at least 420 burials in the Jackson Avenue Cemetery, however the inscription on the re-interment monument at Hebrew Rest #1[5] only lists the names of 271 individuals and states that ". . . mingled with their dust was that of unnumbered others . . ."[6]
Based upon this information as well as the knowledge, as stated in your request letter, that remains from the First Gates of Mercy Cemetery were "moved symbolically with bits of earth to Hebrew Rest #1,"[7] it seems possible, if not highly likely, that human remains continue to be present on the current Jackson Avenue Cemetery property.
Is it reasonable for FEMA to rely on the Touro Synagogue decision in1957 that removed the "common law" cemetery dedication on the subjectproperty?
It is our opinion that FEMA may reasonably rely on the Touro Synagogue
decision in this matter. The ruling of the Civil District Court for Orleans Parish, *Page 3 
which was upheld by the Louisiana Supreme Court in the Touro Synagogue
matter, supra, is res judicata. Res judicata literally means "a matter adjudged."[8] In this sense, a court has passed judgment, appeals were taken, and the case is at its end. Thus, short of petitioning the court to reopen the 1957 case, it is a matter of law that the dedication is removed from the subject property. With regard to the ability to reopen a case, the Louisiana Fourth Circuit Court of Appeal has recently stated that:
The standard of review of a peremptory exception of res judicata
requires an appellate court to determine if the trial court's decision is legally correct or incorrect. Ins. Co. of North America v. Louisiana Power Light, 2008-1315, p. 5 (La.App. 4 Cir. 3/4/09), 10 So.3d 264, 267; Sutter v. Dane Investments, Inc. 07-1268, p. 3 (La.App. 4 Cir. 6/04/08), 985 So.2d 1263, 1265. Louisiana courts recognize that "a final judgment has the authority of res judicata only as to those issues presented in the pleading and conclusively adjudicated by the court. Ins. Co. of North America, 2008-1315 at 6, 10 So.3d at 268. Moreover, the doctrine of res judicata is stricti juris and, accordingly, any doubt concerning the applicability of the principle must be resolved against its application. Id. at 7; Kelty v. Brumfield, 93-1142, p. 7 (La.2/25/94), 633 So.2d 1210, 1215.
Notably, there is statutory recognition that application of the doctrine of res judicata in all circumstances would be unfair. Specifically, La.Rev.Stat. 13:4232(A)(1) provides that a judgment does not bar another action by the plaintiff "[w]hen exceptional circumstances justify relief from the res judicata effect of the judgment." Moreover, the comments accompanying La.Rev.Stat. 13:4232
make clear that his [sic] court has the authority under the statute to exercise its equitable discretion to balance the principle of res judicata with the interests of justice, although clearly "this discretion must be exercised on a case by case basis and such relief should be granted only in truly exceptional cases. . . ."[9]
In other words, res judicata carries strong weight in Louisiana's jurisprudence and matters that have been previously brought to resolution are not overturned by the courts lightly. Because the courts in 1957 were apparently convinced that the human remains that had once been interred in the Jackson Avenue Cemetery were no longer interred, [10] thus obviating the need for the cemetery *Page 4 
dedication on the property, it is doubtful that a court today would question that ruling. Because the matter is res judicata, it is further our opinion that even a finding of human remains on the property today would not have the effect of undoing the 1957 ruling. It would merely give the appropriate parties under La.R.S. 8:304-306 the ability to petition a court to have the dedication reinstated.[11]
 Although the court removed the dedication to cemetery purposes on thesubject property in 1957 and although such a removal is premised on thesatisfaction of the court that no human remains are present on theproperty, would the identification of human remains during the planneddemolition and construction operations effectively undo the prior removalof that dedication?
As noted above, because the 1957 removal of the cemetery dedication on the subject property was properly accomplished and is now a res judicata
matter, it is the opinion of this Office that a subsequent identification of human remains on the site would not, de facto, result in an automatic reinstatement of the cemetery dedication of the property. However, it is further the opinion of this Office that subsequently-enacted laws would be triggered by the identification of human remains on the property. These laws are the subject of the next section.
If the dededication of the Jackson Avenue Cemetery in 1957 is stillvalid, is archaeological site monitoring sufficient during the progressof the proposed demolition and construction operations or is compliancewith the Unmarked Burials Act required based upon the supposition thatthere may still be human remains interred at the site?
Your opinion request has presented us with a unique situation in which it is possible (and, as you note in your request letter, likely) that human remains may still be interred on the subject property, but one in which there is no positive State law imposing an obligation to avoid the property in the absence of such actual remains being found. As noted above, it is the opinion of this Office that the 1957 dededication of the Jackson Avenue Cemetery is still valid in the absence of a successful petition to have the dededication reinstated. Based upon the fact that the subject property was properly dededicated in 1957, there is a primafacie *Page 5 
(legal) expectation that no human remains are still present. For this reason alone, it is our opinion that compliance with the Unmarked Burials Act on the front end of the proposed activity at the site is not indicated nor is it required.
It is our understanding that FEMA is bound by federal laws related to historic preservation[12] and that such laws would require, at a minimum, that an archaeological monitor be present during the contemplated activities. Although we do not here opine as to the requirements of the federal laws applicable to FEMA, we see no reason to implicate any State cemetery laws in this unique situation in the absence of the identification of actual human remains. If and when human remains are identified by the archaeological monitor during the demolition or construction process, it is further our opinion that the Unmarked Burials Act would immediately apply to the site and compliance with that law would be mandatory.
We hope this sufficiently answers your inquiry; however, if we may be of further assistance please do not hesitate to contact our office.
Sincerely yours,
 JAMES D. "BUDDY" CALDWELL
 ATTORNEY GENERAL
 By:___________________
 RYAN M. SEIDEMANN
 Assistant Attorney General
 JDC/RMS/tp
[1] Touro Synagogue v. Goodwill Industries of New Orleans Area,Inc., 96 So.2d 29 (La. 1957).
[2] In your request letter, you refer to the dedication for cemetery purposes that was removed in 1957 as the "common law" cemetery dedication, as no specific statute existed codifying the dedication principle at the time. In fact, La.R.S. 8:304-306, the dedication provisions of Title 8, were not codified until 1974. However, as you have correctly noted, the legal concept of cemetery dedication existed long before 1974. Louisiana courts have recognized that dedication as coming from both the common and civil law traditions and have incorporated them into decisions that long predate their codification in Louisiana law. Seee.g. Touro Synagogue, supra; see also Humphreys v. Bennett Oil Corp.,197 So. 222 (La. 1940).
[3] La.R.S. 8:304-306.
[4] La.R.S. 8:671, et seq.
[5] According to the information that you provided along with your opinion request, the remains that were removed from the Jackson Avenue Cemetery (which also went by the names of First Gates of Mercy Cemetery, Israelite Congregation Shangari Chassed Cemetery, Shangari Chassed Linfuzoth Yehudah Cemetery, and Touro Synagogue Cemetery) in 1957 were reinterred in Hebrew Rest #1 Cemetery. The current location of that cemetery is between Frenchman and Touro Streets near Elysian Fields and Highway 90.
[6] Opinion request at 2.
[7] Id.
[8] Joseph R. Nolan Jacqueline M. Nolan-Haley, BLACK'S LAW DICTIONARY, 6th ed., 1305 (West 1990).
[9] Simmons v. Baumer Foods, Inc., 2009-1739 (La.App. 4 Cir. 4/28/10), — So.3d-, 2010 WL 1727845.
[10] It is important to note here, as you point out in your request letter, that La.R.S. 8:304-306 did not exist as codified law until 17 years after the Touro Synagogue decision was handed down by the Louisiana Supreme Court. Thus, although the Court recognized that cemetery dedications existed as a legal concept prior to the Legislature's enactment of Act 417 of 1974 (the Louisiana cemetery law), it may not have been held to the codified standards that are now part of Louisiana law. In other words, in the absence of the current standards, it is impossible to know what level of certainty the Court required to ensure that all remains had been removed from the site prior to removing the dedication.
[11] As La.R.S. 8:306 currently reads:
Property dedicated to cemetery purposes shall be held and used exclusively for cemetery purposes unless and until the dedication is removed from all or any part of it by judgment of the district court of the parish in which the property is situated in a proceeding brought by the cemetery authority for that purpose . . .
Thus, the proper party would likely be either the cemetery authority (in this case, the congregation) or the current landowner.
[12] E.g., 16 U.S.C. 470, et seq. (the National Historic Preservation Act).